**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**JOHN CARMICHAEL,**

      **Plaintiff,**

**vs.**                            **Case No. 4:16cv238-RH/CAS**

**JULIE JONES, DR. A. ACOSTA,
DR. CHERRY, WARDEN J. SOREY,
and CORIZON HEALTHCARE,**

      **Defendants.**

_____/


## SECOND REPORT AND RECOMMENDATION[1]

Several motions are pending in this case: a motion to dismiss by Defendants Acosta and Cherry, ECF No. 24, a second motion to dismiss by Defendants Acosta, Cherry, and Corizon, ECF No. 36, and a third motion to dismiss by Defendants Jones and Sorey, ECF No. 32. The pro se Plaintiff has been directed to respond to those motions. ECF Nos. 26, 33, and 37. Plaintiff responded only to the first motion. ECF No. 28.

---

[1] The first Report and Recommendation, ECF No. 6, recommended denying Plaintiff's motion for preliminary injunction and protective order, ECF No. 2. Plaintiff's motion was just recently denied as moot. ECF No. 43.

Plaintiff was given until March 30, 2017, to respond to the second and third

motions, ECF No. 38, but as of this date, no response has been filed.[2]

**The Amended Complaint**

Plaintiff is a state prisoner, housed in the Department of Corrections.

ECF No. 9.  Plaintiff began having trouble with his vision in 2014.  *Id.* at 5.

Plaintiff has cataracts which he alleged were causing him "to go blind."  *Id.*

at 4.  Plaintiff alleged that the "only medical treatment for cataracts is

surgical removal."  *Id.*  He said there "is no palliative treatment, or

medication for cataracts."  *Id.*  "Eyeglasses do not correct or improve

cataracts."  *Id.*  Indeed, Plaintiff claimed that he was "denied glasses by the

prison optometrist because of the presence of cataracts in both eyes."  *Id.*

at 7.  Plaintiff alleged that an optometrist diagnosed him with cataracts and

on February 24, 2015, an ophthalmologist "recommended and scheduled"

surgery.  *Id.* at 4-5.  Plaintiff alleged that instead of receiving surgery, he

was transferred back to his institution.  *Id.* at 5.

---

[2] It is possible that Plaintiff did not respond to the motions to dismiss because he "underwent left eye surgery to correct cataracts on February 15, 2017."  ECF No. 42 at 2.  In a declaration filed by Dr. Cherry in response to an Order entered by District Judge Robert Hinkle, ECF No. 41, the Court was advised that Plaintiff was "scheduled to undergo cataracts surgery for his right eye" in March 2017.  *Id.*  Judge Hinkle denied Plaintiff's motion for a preliminary injunction as moot.  ECF No. 43.

On November 5, 2015, Dr. Acosta saw Plaintiff and told him that he
"did not 'meet the criteria' for surgery and denied Plaintiff's request for
medical treatment. ECF No. 9 at 5. Dr. Acosta also refused to inform
Plaintiff what the "qualifying criteria" was to have surgery and ordered
Plaintiff to leave the medical clinic or receive a disciplinary report. *Id.* at 5-
6. Plaintiff alleged that his requests for the treatment recommended by the
ophthalmologist were denied by Dr. Acosta, Dr. Cherry, Warden Sorey, and
Corizon Medical Services, Inc. *Id.* at 6. Plaintiff alleged that he "submitted
numerous written inmate requests" to those Defendants, advising them of
his cataract condition, that "he is suffering from headaches, and decreased
ability to perform visual activities due to this correctable condition, and
requesting that he be treated for cataracts." *Id.* Plaintiff said that all of his
"requests and/or grievances have been denied or ignored." *Id.* Plaintiff
also said that his requests for treatment were denied on the basis that he
"does not meet the criteria," but he has never been given "a medical reason
for" the refusal to treat his cataracts. *Id.* Plaintiff claimed that Defendants
refuse to inform him "of the criteria established for treatment of his
cataracts." *Id.* at 7, 10.

Plaintiff alleged that Dr. Cherry has a policy and practice of denying prescribed medical treatment for "non-life-threatening" conditions "for prisoners over the age of 65." *Id.* at 6. He claimed that Defendants Julie Jones, Dr. Acosta, and Warden Sorey, together with Dr. Cherry, "promulgated a policy or custom to refuse to disclose the criteria for necessary surgery employed as the means for denial, and to deny treatment based on prisoner age, and on the basis of cost-savings." *Id.* at 6, 10.

Plaintiff claimed that Dr. Acosta told Plaintiff that he "had been assigned an inmate assistant" to help him with his vision loss and "would be allowed to go blind because an assistant would 'do his seeing for him' . . . ." *Id.* at 7. Dr. Acosta "also repeatedly denied the Plaintiff's requests for disclosure of the criteria that he cited as the basis for his denials." *Id.* at 8. He "ordered the Plaintiff to 'stop wasting his time' requesting treatment he will 'never get'." *Id.* at 9.

Plaintiff alleged that Warden Sorey was deliberately indifferent to his medical needs because he did not address Plaintiff's grievances but, instead, "without inquiring into the actual validity of the Plaintiff's claim of denial of treatment and deliberate indifference by prison medical personnel,

Warden Sorey allowed the very prison medical officials that were the

subject of the Plaintiff's complaint(s) to respond to the Plaintiff's grievances

. . . ." *Id.* at 7, 8. Plaintiff contends Secretary Jones has denied his

grievances and failed "to properly investigate and ensure that the Plaintiff

receives proper treatment for his cataracts . . . ." *Id.* at 11.

Plaintiff sues the Defendants for violating his Eighth Amendment right

to medical care. *Id.* at 12. Plaintiff also alleges a due process claim for

failing "to disclose, upon request, the criteria to qualify for corrective

treatment for cataracts after such treatment has already been duly

prescribed." *Id.* As relief, Plaintiff seeks a declaratory judgment, injunctive

relief (including cataract surgery), and compensatory and punitive

damages. *Id.* at 12-13.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to

FED. R. CIV. P. 12(b)(6) for failing to state a claim upon which relief can be

granted is whether the plaintiff has alleged enough plausible facts to

support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127

S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from Conley v.

Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "To survive a

Case No. 4:16cv238-RH/CAS

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 at 556); *see also* Speaker v. U.S. Dep't of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 at 556). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 at 557).

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's

---

[3] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)).

claim and the grounds upon which it rests.  Swierkiewicz v. Sorema, 534

U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified

pleading standard applies to all civil actions, with limited exceptions.").  Pro

se complaints are held to less stringent standards than those drafted by an

attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing

Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d

652 (1972)).  Nevertheless, a complaint must provide sufficient notice of

the claim and the grounds upon which it rests so that a "largely groundless

claim" does not proceed through discovery and "take up the time of a

number of other people . . . ."  Dura Pharmaceuticals, Inc. v. Broudo, 544

U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (quoted in Twombly,

127 S.Ct. at 1966).  The requirements of Rule 8 do "not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions."  Iqbal,

556 U.S. at 678-79, 129 S.Ct. at 1949.  A complaint does not need detailed

factual allegations to survive a motion to dismiss, but Rule 8 "demands

more than an unadorned, the-defendant-unlawfully- harmed-me

accusation."  556 U.S. at 678, 129 S.Ct. at 1949.  "A pleading that offers

'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.'" *Id.* (quoting <u>Twombly</u>, 550 U.S., at 555, 127 S.Ct. 1955).

Courts take a "two-pronged approach" when considering a motion to dismiss under Rule 12(b)(6). <u>Iqbal</u>, 556 U.S. at 679, 129 S.Ct. at 1950. The first consideration is whether the complaint presents "well- pleaded factual allegations" which are entitled to a presumption of truth or, whether, the complaint merely asserts "legal conclusions" which "are not entitled to the assumption of truth." *Id.* at 679, 129 S.Ct. at 1950. If the complaint contains factual allegations that are well pled, the second step is to consider whether the non-conclusory factual allegations "plausibly give rise to an entitlement to relief." *Id.* If so, a motion to dismiss should be denied. *Id.*, at 680, 129 S.Ct. at 1950-51 (citations omitted).

**First Motion to Dismiss, ECF No. 24**

Dr. Cherry and Dr. Acosta contend that the amended complaint fails to state a claim, that Plaintiff failed to exhaust administrative remedies, that his claim is moot because Plaintiff's cataracts surgery has been approved and was "in the process of being scheduled," that the claim against Defendants in their official capacities for money damages is barred, and the "claims against Dr. Cherry and Dr. Acosta are redundant." *Id.* at 1-2.

Case No. 4:16cv238-RH/CAS

**Second Motion to Dismiss, ECF No. 32**

Defendants Jones and Sorey also move to dismiss the amended

complaint on the basis of exhaustion. ECF No. 32 at 4-7. Defendants

assert that Plaintiff's institutional grievances were all denied, thus, requiring

Plaintiff to file an appeal. *Id.* at 7. Because Plaintiff's grievance appeals

"were all returned without action," Defendants contend "Plaintiff did not

exhaust his administrative remedies at the grievance appeal level." *Id.*

Defendants further assert that Plaintiff has not alleged a due process claim,

*id.* at 7, and does not allege a conspiracy claim. *Id.* at 8-9. Defendants

also argue that Plaintiff's amended complaint does not properly allege a

claim against them, but rather seeks to hold them liable under a theory of

supervisory liability. *Id.* at 9-13. They also contend that Plaintiff is not

entitled to injunctive relief, *id.* at 13-15, they are entitled to qualified

immunity, *id.* at 15-16, and Eleventh Amendment immunity. *Id.* at 16-17.

**Third motion to dismiss, ECF No. 36**

Dr. Cherry and Dr. Acosta filed a separate motion to dismiss as to the

claims brought against them in their individual capacities for monetary

damages. ECF No. 36 at 2, n.1; *see also* ECF No. 24 at 2. Dr. Cherry is

the regional medical director and Dr. Acosta is the prison physician at

Wakulla Correctional Institution.  ECF No. 36 at 2.  In this motion to

dismiss, it is argued that Dr. Acosta "cannot be liable for merely acting as a

messenger in relaying that a determination was made that [Plaintiff] did not

meet medical criteria for surgery."  *Id.* at 7.  Additionally, it is asserted that

the complaint should be dismissed because it amounts "to no more than a

difference of opinion between" Plaintiff and his doctors.  *Id.*  Finally,

Corizon seeks dismissal on the basis that Plaintiff "does not allege a

widespread practice, and he does not include any factual allegations to

support this speculative and conclusory claim."  *Id.* at 10.  Defendants also

note that Plaintiff has not alleged any facts showing that his "condition

worsened because of an alleged delay."  *Id.* at 11.

**Analysis**

**A.    Exhaustion**

When the Prison Litigation Reform Act was enacted, Congress

mandated that "[n]o action shall be brought with respect to prison

conditions under section 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted."  42 U.S.C.

§ 1997e(a). The exhaustion requirement is mandatory, <u>Alexander v. Hawk</u>,

Case No. 4:16cv238-RH/CAS

159 F.3d 1321, 1324-26 (11th Cir. 1998), but not jurisdictional.  Bryant v.

Rich, 530 F.3d 1368, 1374 n.10 (11th Cir.), *cert. denied*, 129 S.Ct. 733

(2008) (citing Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2392, 165

L.Ed.2d 368 (2006)).  There is no discretion to waive this requirement or

provide continuances of prisoner litigation in the event that a claim has not

been exhausted prior to filing.  Alexander, 159 F.3d at 1325.  "Requiring

exhaustion allows prison officials an opportunity to resolve disputes

concerning the exercise of their responsibilities before being haled into

court."  Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166

L.Ed.2d 798 (2007)[4].

    A prisoner must also comply with the process set forth and

established by the grievance procedures.  *See* Miller v. Tanner, 196 F.3d

1190, 1193 (11th Cir. 1999).  In other words, not only must a prisoner

exhaust a claim under § 1997e(a), the "PLRA exhaustion requirement

requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct.

2378, 2387 (2006) (concluding that "proper exhaustion" means complying

---

[4] The Court further rejected the view of the Sixth Circuit when it concluded that
"nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement."
Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (concluding "that exhaustion
is not *per se* inadequate simply because an individual later sued was not named in the
grievances.").

Case No. 4:16cv238-RH/CAS

with the specific prison grievance requirements, not judicially imposed

requirements). Even if a grievance is initially denied as untimely, a

prisoner must appeal the denial of the grievance. *See* Harper v. Jenkin,

179 F.3d 1311 (11th Cir. 1999) (noting Georgia's inmate grievance

procedures allow "the grievance coordinator to waive the time period for

filing a grievance if 'good cause' is shown"); Bryant v. Rich, 530 F.3d at

1373. If one claim is unexhausted, the Court may separate that claim out

and proceed on only those claims that have been exhausted. Jones, 549

U.S. at 223, 127 S.Ct. at 925 (rejecting a "total exhaustion rule" and

requiring dismissal only of those unexhausted "claims," not an entire

"action.").

Defendants "bear the burden of proving that the plaintiff has failed to

exhaust his available administrative remedies." Turner v. Burnside, 541

F.3d 1077, 1082-83 (11th Cir. 2008) (relying on Jones v. Bock). The issue

of whether a prisoner failed "to properly exhaust available administrative

remedies under the PLRA should be treated as a matter in abatement."

Bryant, 530 F.3d at 1374 (cited in Turner, 541 F.3d at 1082). Such a

"defense is treated 'like a defense for lack of jurisdiction,' although it is not

a jurisdictional matter." Bryant, 530 F.3d at 1374 (cited in Turner, 541 F.3d at 1082).

Ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process." Turner, 541 F.3d at 1082 (citation omitted). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Id.* "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* (citing to Bryant, 530 F.3d at 1373-74). "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74, 1376).[5] The burden of proof for evaluating an exhaustion defense rests with the defendant. Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is

---

[5] "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376.

an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Turner, 541 F.3d at 1082-83.

To the degree the first motion to dismiss could be read to assert that Plaintiff did not properly exhaust administrative remedies because he bypassed the informal grievance step, that argument is rejected.  Plaintiff points out that Rule 33-103.006(3)(e) permits inmates to bypass the informal grievance step "when filing a grievance of a medical nature."  ECF No. 28 at 4.  Plaintiff is correct that he is not required to file an informal grievance concerning medical issues.  The Department's rules permit him to file a formal grievance and then an appeal.  FLA. ADMIN. CODE R. 33-103.005(1); FLA. ADMIN. CODE R. 33-103.008; Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010) (finding that when an inmate files "a medical grievance, as was the case here, the initial informal grievance step may be omitted.").  Defendants' argument on that point should be rejected.

Defendants Acosta and Cherry also argue that after the November 18, 2015, formal grievance was denied, Plaintiff "was obligated" to file an appeal.  *Id.*  Rather than do so, those Defendants state that Plaintiff filed an

informal grievance on December 4, 2015. *Id.* Thus, Defendants argue that

Plaintiff did not exhaust administrative remedies and this case must be

dismissed. *Id.* at 6-7. For their part, Defendants Jones and Sorey

acknowledge that Plaintiff filed three grievance appeals. ECF No. 32 at 6-

7. However, they contend Plaintiff did not exhaust administrative remedies

because all three of those appeals were returned without action. *Id.*

Plaintiff contends that he "timely appealed the denial of his formal

grievance #1511-118-120 to the Office of the Secretary on December 5,

2015." *Id.*; *see also* Plaintiff's Ex. E (ECF No. 28 at 23). Plaintiff advises

that his appeal was denied on January 5, 2016, on the basis that he did not

attach a copy of his formal grievance as required. *Id.* at 4; *see also* Ex. E

(ECF No. 28 at 24). However, Plaintiff reports that he did attach "the

formal grievance to his appeal as required," and claims that officials must

have "removed the copy as a means to deny his grievance and to deny him

his requested relief." *Id.* at 4-5.

There is a dispute between the parties concerning the sufficiency of

Plaintiff's first appeal. Plaintiff's version of facts are assumed to be true. In

that light, Plaintiff has demonstrated that he filed a formal grievance (log #

1511-118-120) on November 18, 2015, and it was denied on November 30,

2015.  ECF No. 28 at 19-20.  Plaintiff filed an appeal which he dated

December 5, 2015, log # 15-6-46414.  *Id.* at 23.  A notation on the bottom

indicates it was "submitted" on December 16, 2015, and "received" in the

Wakulla Assistant Warden's office on December 14, 2015.  *Id.*  Thereafter,

there is a stamp showing it was "received" in the Secretary's Office of

Inmate Grievances on December 21, 2015.  *Id.*  The appeal was then

"returned without action" on January 4, 2016.  *Id.* at 23-24.  Plaintiff's

response to the motion to dismiss is sworn under penalty of perjury.  ECF

No. 28 at 14.  Plaintiff declared that he properly followed the requirements

for filing a grievance appeal and "attached the formal grievance to his

appeal as required, but that institution officials intentionally removed the

copy as a means to deny his grievance and to deny him his requested

relief."  *Id.* at 5.  Thus, Plaintiff has provided evidence that unidentified and

unknown prison officials thwarted his actions by removing the required

copy of his formal grievance which was attached to the appeal.

An inmate is not required to "grieve a breakdown in the grievance

process" when he is prevented from filing a timely grievance appeal.

Turner, 541 F.3d at 1083 (finding the rules do not "require an inmate to

seek leave to resubmit the same grievance to the same official who

destroyed the grievance when it was properly filed as a matter of right.");

Smith v. Van, No. 4:15cv53-RH/CAS, 2016 WL 3746173, at *3 (N.D. Fla.

June 3, 2016), report and recommendation adopted, No. 4:15cv53-

RH/CAS, 2016 WL 3747617 (N.D. Fla. July 7, 2016) (concluding that

plaintiff's "efforts to file grievances were thwarted by the alleged removal of

his grievances" and denying motion to dismiss). Accepting Plaintiff's

response as true, he has sufficiently shown that he complied with the

grievance requirements.

Moreover, in an effort to diligently seek relief, Plaintiff has shown that

he filed two other appeals to the Secretary after his formal grievances were

denied. Plaintiff sought to correct the return of his first appeal by

submitting another appeal dated January 8, 2016, log # 16-6-02645. ECF

No. 28 at 25. Plaintiff said that he was appealing formal grievance log

#1511-118-120, which he said was attached, "but Wakulla prison staff

removed the copy of my formal grievance to delay and deny relief." *Id.* at

25. The appeal was stamped received on January 15, 2016, *id.*, and

ultimately "returned without action" again. *Id.* at 26. The response stated

his appeal was not received within 15 calendar days of the institutional

response as required. *Id.* However, the response was not dated by the

Secretary's representative until April 8, 2016, and it was not stamped as mailed until April 13, 2016.  *Id.*

Plaintiff then filed another formal grievance at the institution level which he dated January 11, 2016, log # 1601-118-069.  ECF No. 28 at 27. It was stamped received on January 13, 2016, *id.*, and denied on February 3, 2016.  *Id.* at 20.  Plaintiff filed his third appeal which he dated February 11, 2016, log # 16-6-08725.  *Id.* at 30.  It was stamped received on February 26, 2016, and "returned without action" because it was not received within 15 days.  *Id.* at 30-31.  The response to that appeal was dated by the Secretary's representative on April 7, 2016, but not mailed until April 13, 2016.  *Id.* at 31.

Plaintiff argues that he completed the grievance process but was thwarted in his efforts by the removal of documentation from his appeals or delayed receipt of his appeals so they could be denied as untimely.  ECF No. 28 at 6.  Plaintiff requests that the motion to dismiss be denied as to the argument that he did not exhaust administrative remedies.

Although Plaintiff's first appeal could be considered proper exhaustion based on Plaintiff's declaration that he had attached the formal grievance to the appeal as required, there is another stronger reason to

conclude that Plaintiff exhausted administrative remedies as required.

Plaintiff's second grievance appeal was dated January 8, 2016, and

stamped received on January 15, 2016.  ECF No. 28 at 25 (Plaintiff's Ex.

F).  The appeal was "returned without action" and dated by the Secretary's

representative on April 8, 2016.  *Id.* at 26.

The rules provide time limits for responding to grievances and

appeals.  FLA. ADMIN. CODE R. 33-103.011. The rule provides that unless a

grievant "has agreed in writing to an extension, expiration of a time limit at

any step in the process shall entitle the complainant to proceed to the next

step of the grievance process."  FLA. ADMIN. CODE R. 33-103.011(4).

Specifically, the rule states that if an inmate "does not agree to an

extension of time at the central office level of review, he shall be entitled to

proceed with judicial remedies as he would have exhausted his

administrative remedies."  *Id.*  The rules provide that a grievance appeal

must "be responded to within 30 calendar days from the date of the receipt

of the grievance."  Fed. R. Civ. P. 33-103.011(3)(c).  Plaintiff's second

appeal contains a date stamp showing received on January 15, 2016.  ECF

No. 28 at 25.  The grievance was not responded to, however, until April 8,

2016, and not mailed until April 13, 2106.  *Id.* at 26.  Plaintiff was "entitled

to proceed with judicial remedies" after thirty days.  Thus, Plaintiff's complaint, filed in this Court on April 18, 2016, the date it was provided to prison officials for mailing, should not be dismissed for failure to exhaust administrative remedies.  Both motions to dismiss, ECF Nos. 24 and 32, should be denied as to this issue.

## B.  Moot

Dr. Cherry and Dr. Acosta also seek dismissal on the basis that Plaintiff's claims are moot.  ECF No. 24 at 7.  The motion to dismiss notes that Plaintiff had been approved for cataracts surgery.  *Id.*  Indeed, the record discloses that Plaintiff had surgery on his left eye on February 15, 2017, and was scheduled for surgery on the right eye in March 2017.  ECF No. 42 at 2.  Plaintiff's requests for injunctive relief, however, were not limited to having surgery.  Plaintiff also requested disclosure of the "criteria for cataract surgery" and to require changes to several alleged policies. *Id.* at 13.  Plaintiff seeks compensatory and punitive damages as well as a declaratory judgment.  *Id.* at 12-13.  Accordingly, the case should not be dismissed as moot.

**C.    Deliberate Indifference against Cherry and Acosta**

Dr. Cherry and Dr. Acosta also claim that Plaintiff's amended complaint does not sufficiently plead facts showing deliberate indifference. ECF No. 24 at 7-8.  Plaintiff alleged that he was diagnosed with cataracts in both eyes and was recommended and scheduled for corrective surgery. ECF No. 9 at 5.  Without explanation, he was not given surgery and returned to the institution.  *Id.*  Dr. Acosta allegedly denied Plaintiff surgery based on undisclosed "criteria" and Dr. Cherry allegedly denied Plaintiff's surgery based on a policy to deny or delay medical treatment for non-life-threatening medical conditions for prisoners over age 65.  *Id.* at 5-6. Dr. Acosta allegedly told Plaintiff he "would be allowed to go blind" and would be given an assistant.  *Id.* at 7.  Plaintiff alleged an intentional delay in providing the surgery.  *Id.* at 9.  Plaintiff alleged that both Defendants were aware of his condition, knew that surgery had been recommended, but refused to permit Plaintiff to have the surgery.  *Id.* at 9.  Rather than acting as a "messenger," Plaintiff alleged that Dr. Acosta specifically told him that "he was denying medical treatment for the Plaintiff's cataracts."  *Id.* at 6.  Plaintiff's amended complaint sufficiently provides facts to support a

claim that both Defendants were deliberately indifferent to his serious

medical needs.  The motion to dismiss on that basis should be denied.

**D.    Eleventh Amendment**

Dr. Cherry and Dr. Acosta seek dismissal of Plaintiff's claims for

money damages because state officials sued in their official capacity are

immune from such damages by the Eleventh Amendment.  ECF No. 24 at

9.   Defendants Jones and Sorey also assert their Eleventh Amendment

immunity.  ECF No. 32 at 16-17.

State officials sued in their official capacities for money damages are

barred by the Eleventh Amendment.  <u>Kentucky v. Graham</u>, 473 U.S. 159,

169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985) (reiterating that "absent

waiver by the State or valid congressional override, the Eleventh

Amendment bars a damages action against a State in federal court.").

That "bar remains in effect when State officials are sued for damages in

their official capacity."  <u>Kentucky</u>, 473 U.S. at 169, 105 S.Ct. at 3107; *see*

*also* <u>Odebrecht Const., Inc. v. Secretary, Fla. Dep't of Transp.</u>, 715 F.3d

1268, 1289 (11th Cir. 2013) (same).  Congress has not abrogated the

state's immunity, <u>Quern v. Jordan</u>, 440 U.S. 332, 99 S.Ct. 1139, 59 L. Ed.

2d 358 (1979); <u>Edelman v. Jordan</u>, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed.

2d 662 (1974), nor has Florida waived its Eleventh Amendment sovereign immunity and consented to suit in federal court under § 1983. <u>Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L. Ed. 2d 171 (1985); <u>Gamble v. Florida Dep't of Health and Rehab. Servs.</u>, 779 F.2d 1509, 1520 (11th Cir. 1986). Notwithstanding, prospective relief may be sought against a state official in federal court). <u>Sandoval v. Hagan</u>, 197 F.3d 484, 492 (11th Cir. 1999) (citing <u>Summit Med. Assoc. v. Pryor</u>, 180 F.3d 1326, 1336-38 (11th Cir. 1999)).

> The doctrine prohibits state officers from enforcing state policies in violation of the Constitution or federal law under a legal "fiction" that "creates an imaginary distinction between the state and its officers, deeming the officers to act without the state's authority, and hence, without immunity protection, when they enforce state laws in derogation" of federal or constitutional rights.

<u>Sandoval</u>, 197 F.3d at 492 (citing <u>Summit Med.</u>, 180 F.3d at 1337). The motion to dismiss the monetary damages claims brought against the Defendants in their official capacities should be granted. However, the Eleventh Amendment does not bar this suit against Defendants for the requested prospective injunctive relief. The motions to dismiss the official capacity claims should be **granted in part**.

Case No. 4:16cv238-RH/CAS

**E.    Redundant Claims**

Dr. Cherry and Dr. Acosta assert that the official capacity claims brought against them are redundant because Plaintiff also sues Secretary Julie Jones and Warden Sorey.  Although those persons are named as Defendants and Julie Jones has authority over all Florida prisons, it is recommended that the motion to dismiss on the basis of redundancy be denied.  Dr. Cherry and Dr. Acosta have medical training and expertise in that area.  The Secretary will, presumably, rely upon that expertise in establishing policy as it pertains to providing medical care to Florida prisoners.  "At this stage of the litigation, doctors sued in their official capacity as well as the Secretary for the Department of Corrections are appropriate defendants to address claims challenging policies which are alleged to be the 'moving force' behind a constitutional deprivation and should not be dismissed."  D'Amico v. Montoya, No. 4:15cv127-MW/CAS, 2016 WL 3774130, at *3 (N.D. Fla. June 13, 2016), report and recommendation adopted, No. 4:15cv127-MW/CAS, 2016 WL 3769372 (N.D. Fla. July 14, 2016) (citing Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 705-06 (11th Cir. 1985) (noting that if a county permits ether "the sheriff and/or prison health officials" to establish an unconstitutional policy

or custom, both are appropriate defendants and may be liable)).  The claims against Dr. Cherry and Dr. Acosta are not redundant, but beneficial and should not be dismissed.

## F.    Due Process

Defendants Jones and Sorey assert that Plaintiff has alleged only a conclusory due process claim and fails to describe how not disclosing criteria for cataracts surgery is a due process claim.  ECF No. 32 at 7. Plaintiff has not responded to this motion.  However, construing Plaintiff's amended complaint liberally, Plaintiff contends he was denied due process because Defendants "failed to disclose, upon request, the criteria to qualify for corrective treatment for cataracts . . . ."  ECF No. 9 at 12.  He claims Defendants have refused "to disclose the reasons or criteria used to deny" him treatment.  *Id.*

Prisoners may "claim the protections of the Due Process Clause," Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 2974, 41 L. Ed. 2d 935 (1974), and it has been recognized that prisoners have a "significant liberty interest" in their medical care.  *See* Washington v. Harper, 494 U.S. 210, 221–22, 110 S. Ct. 1028, 1036, 108 L. Ed. 2d 178 (1990) (stating that prisoner possessed "a significant liberty interest in avoiding the unwanted

administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment.").  Accepting that prisoners have a protected right to medical care, it cannot be said that Plaintiff has failed to set forth sufficient facts to support a plausible due process claim.  The motion to dismiss should be denied as to this argument.

## G.    Conspiracy

Defendants Jones and Sorey contend that Plaintiff is attempting to allege a conspiracy claim.  ECF No. 32 at 8.  Defendants correctly note that the intracorporate conspiracy doctrine bars such a claim.  While true, Plaintiff's amended complaint does not seek liability against any Defendant for conspiring with another.  Rather, Plaintiff alleged facts showing that Defendants each had a role in denying and/or delaying his medical care for cataracts.  Defendants' argument should be rejected.

## H.    Deliberate Indifference against Jones and Sorey

Defendants Jones and Sorey contend that the claims against them stem "only from their holding supervisory positions."  ECF No. 32 at 9. Defendants contend that "Plaintiff's allegation that the defendants had a custom or policy to deny treatment based on prisoner age and cost savings

is conclusory." *Id.* at 10.  Further, Defendants argue that a complaint does

not state a claim based on the denial of grievances.  *Id.* at 12-13.

Plaintiff alleged that Defendants Jones and Sorey, along with

Dr. Cherry and Corizon Healthcare "promulgated a policy or custom to

refuse to disclose the criteria for necessary surgery . . . and to deny

treatment based on prisoner age, and on the basis of cost-savings."  ECF

No. 9 at 6.  Plaintiff specifically alleged that he submitted grievances to

Warden Sorey.  *Id.* at 7.  Those facts demonstrate that Plaintiff's claim

against the Warden is based on his response to grievances.  Defendants

are correct that "[i]solated incidents are generally insufficient to establish a

supervisor's liability, and filing a grievance with a supervisory person does

not alone make the supervisor liable for the allegedly violative conduct

brought to light by the grievance, even if the grievance is denied."  Owens

v. Leavins, No. 5:05–cv–228, 2006 WL 2640275, at *4 (N.D.Fla. Sept.13,

2006).  There are insufficient facts alleged to show that a warden at one

prison is in a position to establish policy concerning the medical care for

prisoners within the Florida Department of Corrections.  The motion to

dismiss should be granted as to Warden Sorey.

However, the Secretary is an appropriate official to establish policy. Plaintiff's amended complaint alleges sufficient facts to withstand the motion to dismiss for failing to state a claim. The motion to dismiss should be denied as to Secretary Jones.

## I. Injunctive Relief

It is argued that Plaintiff's requests for injunctive relief should be denied. ECF No. 32 at 13-14. Plaintiff has sufficiently alleged claims under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. Since filing this action, he has recently had surgery performed as requested. Other requests for injunctive relief are pending. At the motion to dismiss stage, the other requests should not be dismissed as Plaintiff has alleged plausible claims upon which relief may be granted.

## J. Qualified Immunity

Defendants contend they are entitled to qualified immunity. ECF No. 32 at 15-16. It has been well established that the Eighth Amendment requires inmates be provided "basic human necessities" such as medical care. Harris v. Thigpen, 941 F.2d 1495, 1511 (11th Cir. 1991). It has been well established for over 40 years that deliberate indifference to the serious

medical needs of sentenced prisoners violates the Eighth Amendment's prohibition of cruel and unusual punishment.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs.  If true, that is a constitutional violation which has been clearly established.  Defendants are not entitled to qualified immunity.

**K.    Corizon**

Finally, Corizon contends that Plaintiff's claim against it for having a policy of denying care to elderly inmates is "speculative and conclusory" and should be dismissed.  ECF No. 36 at 10.  For the reasons stated above in Subsection H, the deliberate indifference claims against Jones and Sorey, this aspect of the motion to dismiss should be denied.  Plaintiff alleged that Corizon, along with the other Defendants, "promulgated a policy or custom to refuse to disclose the criteria for necessary surgery . . . and to deny treatment based on prisoner age, and on the basis of cost-savings."  ECF No. 9 at 6.  Supporting that allegations are facts that Plaintiff was approved and scheduled for surgery by an ophthalmologist, but returned to his institution without surgery.  Plaintiff alleged that he was never given a medical reason for that action other than saying he did not

meet undisclosed "criteria." ECF No. 9 at 5. Such a reason is suspect in light of the ophthalmologist's recommendation and the fact that Plaintiff recently had the recommended surgery, some ten months after initiating this case. The motion to dismiss as to Corizon should be denied.

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that the motion to dismiss filed by Defendants Acosta, Cherry, and Corizon, ECF No. 36, be **DENIED**, that the motion to dismiss filed by Defendants Jones and Sorey, ECF No. 32, be **GRANTED** as to the claim against Warden Sorey and the claim for monetary damages against Defendant Jones in her official capacity, but otherwise **DENIED**. It is further recommended that the motion to dismiss filed by Defendants Acosta and Cherry, ECF No. 24, be **GRANTED** as to the claim for monetary damages in their official capacities, but otherwise **DENIED**, and this case be **REMANDED** for further proceedings and Defendants be directed to file an answer to Plaintiff's amended complaint.

**IN CHAMBERS** at Tallahassee, Florida, on April 12, 2017.

S/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.